UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



JASON SHOLA AKANDE,

                    Plaintiff,

        v.

MICHAEL PHILIPS, *I.C.E. Field Office
Director*, JOHN DOE 1, *The Owner/Chief
Executive Officer, Giant Airline, New York*,
JOHN DOE 2, *The Pilot of Giant Airline*,
and JOHN DOE 3, *The Co-Pilot of Giant
Airline*,

                    Defendants.

**DECISION AND ORDER**

1:17-CV-01243 EAW

## INTRODUCTION

Plaintiff Jason Shola Akande ("Plaintiff") filed this *pro se* action on November 30,

2017, seeking relief for violations of his constitutional rights pursuant to *Bivens v. Six

Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (Dkt. 1). On

July 11, 2018, the Court granted Plaintiff's request to proceed *in forma pauperis* and

screened his initial Complaint pursuant to 28 U.S.C. § 1915(e)(2). (Dkt. 6). The Court

dismissed Plaintiff's claim for the destruction of his legal materials as against Defendant

Michael Philips ("Philips") as well as all claims against Defendants John Doe 1, John Doe

2, and John Doe 3 (collectively, the "John Doe Defendants") without prejudice. (*Id.* at 24).

The remaining claims alleged against Philips and the other named defendants were

dismissed with prejudice, with the exception of Plaintiff's excessive force claim asserted

against Philips, which was permitted to proceed to service unless Plaintiff filed an amended

- 1 -

complaint consistent with the Court's screening order. (*Id.*). Plaintiff was advised that any amended complaint must include all necessary allegations so that it may stand alone as the sole complaint in this action. (*Id.*).

On September 7, 2018, Plaintiff filed his Amended Complaint (Dkt. 7) along with three motions requesting various miscellaneous relief (Dkt. 8; Dkt. 9; Dkt. 10). Plaintiff subsequently filed two motions to expedite the review of his other motions on March 4, 2019, and March 13, 2019, respectively. (Dkt. 14; Dkt. 15).

The Court has considered each of Plaintiff's motions and has reviewed the Amended Complaint as required by 28 U.S.C. § 1915(e)(2). For the following reasons, Plaintiff's amended excessive force claim may proceed to service as against Philips, but his remaining claims are dismissed with prejudice, Plaintiff's motion for permission to use the Court's electronic filing system (Dkt. 8) is denied without prejudice, motion for an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) is denied in part and granted in part (Dkt. 9), motion for subpoenas (Dkt. 10) is denied without prejudice as premature, and his two motions to expedite (Dkt. 14; Dkt. 15) are dismissed as moot.

## BACKGROUND

Plaintiff's allegations in the Amended Complaint are in many ways substantially the same as those asserted in his initial Complaint. Plaintiff claims that Philips, who was employed as the Immigration and Customs Enforcement ("ICE") Field Office Director in Buffalo, New York, forged a Nigerian Travel Certificate to unlawfully remove him from the United States in order to "help some 'rogue' Connecticut Law Enforcement Officers get away with" having illegally arrested Plaintiff and caused him to serve seven years of

"false imprisonment" and two years of "federal prison overtime." (Dkt. 7 at 1-2).[1] Philips

and "other ICE agents" conspired with the "rogue" officers to unlawfully remove Plaintiff

from the United States to impede his legal actions challenging his alleged illegal arrests,

false imprisonment, and federal sentence. (*Id.* at 5). Philips used a "private airline,"

identified by Plaintiff as "Giant Airline," to "execute the illegal removal." (*Id.*). Plaintiff

alleges that John Doe 1 is the "Owner/CEO" of "Giant Private Airline," and that John Doe

2 and John Doe 3 were the pilot and the co-pilot of the "deportation plane," respectively.

(*Id.* at 4).

Before Plaintiff was allegedly removed from the United States, "Philips and his

fellow ICE agents deliberately confiscated and destroyed" all of Plaintiff's "legal

documents and legal materials" in order to prevent Plaintiff from contesting the purportedly

wrongful acts he alleges were committed against him. (*See id.* at 6-7 (emphasis omitted)).

Plaintiff claims that he "consequently lost" several judicial and administrative actions that

he outlines in further detail within his Amended Complaint. (*See id.* at 7-18).

Plaintiff also claims that "Philips and his fellow ICE Agents (About 12 of them)"

stripped Plaintiff of his clothes in front of "all female ICE agents" and "all other female

prison staff," and then "tied Plaintiff up with chains" while they "severely beat him up

while butt naked." (*Id.* at 20). Plaintiff was then carried "like a dead body" into the

---

[1]     To the extent that Plaintiff's allegations of wrongful conduct arise from the
execution of his removal order, the Court has already dismissed those claims with prejudice
in its original screening order for lack of subject matter jurisdiction pursuant to 8 U.S.C.
§ 1252(g). (Dkt. 6 at 10).

deportation plane and was "periodically" beaten during the flight from Buffalo, New York to Lagos, Nigeria. (*Id.*).[2]

Plaintiff further alleges that John Doe 1 contractually agreed "to use his aircraft[] to violate Plaintiff's constitutional rights." (*Id.* at 23). Stated differently, Plaintiff claims that John Doe 1 "consented" to Philips' use of excessive force, and that he "knew exactly what Defendant Philips and other ICE agents would do with his aircraft[] before he allowed them to use it." (*Id.*). Plaintiff also alleges that John Doe 2 and John Doe 3 both "witnessed" the excessive force used by Philips and the "other ICE Agents" and yet, they did nothing to intervene to assist Plaintiff. (*Id.* at 25-27).

Attached to Plaintiff's Amended Complaint were three motions requesting various forms of relief. Plaintiff seeks permission to use the Court's electronic filing system ("CM/ECF") (Dkt. 8), an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) to identify Philips' "current contact information" and the John Doe Defendants' identities and contact information for purposes of service process (Dkt. 9), and subpoenas to retrieve "some documentary records" (Dkt. 10).

---

[2] Although the Court previously determined that it is without jurisdiction to entertain Plaintiff's allegations that his removal was unlawfully secured via a fabricated travel certificate (*see* Dkt. 6 at 6-9), Plaintiff now contends that the alleged issuance of the "forged" travel certificate is itself "excessive force" (Dkt. 7 at 22). The Court rejects this position irrespective of the purported illegality of the travel certificate because an excessive force claim requires an unlawful application of force. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015) (describing "excessive force" in the context of the Fifth Amendment); *Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992) (describing "excessive force" in the context of the Eighth Amendment). The issuance of a travel certificate, in-and-of itself, does not amount to excessive force.

## DISCUSSION

### I.  Plaintiff's Excessive Force Claims May Proceed as Against Philips

#### A.  Standard of Review

"Section 1915 requires the Court to conduct an initial screening of complaints filed by civil litigants proceeding *in forma pauperis*, to ensure that the case goes forward only if it meets certain requirements." *Guess v. Jahromi*, No. 6:17-CV-06121(MAT), 2017 WL 1063474, at *2 (W.D.N.Y. Mar. 21, 2017), *reconsideration denied*, 2017 WL 1489142 (W.D.N.Y. Apr. 26, 2017). In evaluating the complaint, a court must accept as true all of the plaintiff's factual allegations, and must draw all inferences in the plaintiff's favor. *See, e.g.*, *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even *pro se* pleadings must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiff's alike.").

Upon conducting its screening of the complaint, a court must dismiss the case pursuant to § 1915(e)(2)(B) "if the [c]ourt determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Eckert v. Schroeder, Joseph & Assocs.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005). "In addition, if the Court 'determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action.'" *West v. Sanchez*, No. 17-CV-2482 (MKB), 2017 WL 1628887, at *1 (E.D.N.Y.

May 1, 2017) (quoting Fed. R. Civ. P. 12(h)(3)); *see English v. Sellers*, No. 07-CV-6611L, 2008 WL 189645, at *1 (W.D.N.Y. Jan. 18, 2008) ("[E]ven pleadings submitted *pro se* must fit within the subject matter jurisdiction of an Article III court. . . .").

**B.  Plaintiff's Excessive Force Claims Are Assumed to Fall Outside the Jurisdictional Bar Set Forth in § 1252(g)**

In its July 11, 2018, order, the Court assumed—for screening purposes only—that Plaintiff's excessive force allegations fell outside the jurisdictional bar set forth in 8 U.S.C. § 1252(g), that those claims implicated both the Fifth and Eighth Amendments, and that they presented a new context under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (Dkt. 6 at 11, 21-23). The Court reaches the same conclusion here for substantially the same reasons as those outlined in the initial screening order. The Second Circuit has not yet addressed whether a district court has jurisdiction over an excessive force claim that appears to arise out of the act of physically removing a plaintiff aboard an airplane pursuant to his immigration removal order. *Cf. Foster v. Townsley*, 243 F.3d 210, 214 (5th Cir. 2001) (finding that "[t]he particular acts that form the basis of [the plaintiff]'s lawsuit arise from the officials' decision to execute his removal order," and thus, "[h]is claims of excessive force," amongst others, were "all directly connected to the execution of the deportation order").

Furthermore, it is still not completely clear whether Plaintiff also claims that he experienced mistreatment simply while he was detained and awaiting the execution of his removal order. *See Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 944 (5th Cir. 1999) (holding that claims of mistreatment while in detention "bear no more than a remote

relationship to the Attorney General's decision to 'execute [Humphries's] removal order'"). "In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Bahr v. City Univ. of N.Y./York Coll.*, No. 15-CV-4380 (MKB), 2016 WL 8711060, at *3 (E.D.N.Y. Dec. 9, 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *see Phillips v. Girdich*, 408 F.3d 124, 127-28 (2d Cir. 2005) ("We also have held that, when reviewing *pro se* submissions, a district court should look at them with a lenient eye, allowing borderline cases to proceed." (quotation marks and citation omitted)). Although the Court continues to question whether it has jurisdiction over Plaintiff's excessive force claim, the Court will again assume, for screening purposes only, that Plaintiff's excessive force allegations fall outside the jurisdictional bar of § 1252(g). As the Court indicated in its previous screening order, nothing contained in this Decision and Order shall be construed to prevent Defendants from seeking dismissal on this or any other ground.

### C. Plaintiff's Excessive Force Claims Are Construed as Arising Under the Fifth and Eighth Amendments

Plaintiff claims that he was subjected to excessive force by Philips in violation of his Fifth and Eighth Amendment rights. (*See, e.g.*, Dkt. 7 at 22). However, it is not clear whether his alleged mistreatment arose only after he had been placed into ICE's custody or whether it occurred while he was serving his criminal sentence as well. *See Adekoya v. Chertoff*, 431 F. App'x 85, 88 (3d Cir. 2011) ("Because Adekoya was an immigration detainee at the time of the alleged constitutional violations, he was entitled to the same

protections as a pretrial detainee."); *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010) (holding that it is the due process "standard that controls excessive force claims brought by federal immigration detainees"); *accord Zikianda v. County of Albany*, No. 1:12-CV-1194, 2015 WL 5510956, at *14 n.5 (N.D.N.Y. Sept. 15, 2015) ("The deliberate indifference standard recognizes the unique demands for health care in jails, and the same logic that would apply that standard to pre-trial detainees counsels that the standard apply to civil immigration detainees like the Decedent."); *see also Ortiz v. Pearson*, 88 F. Supp. 2d 151, 160 (S.D.N.Y. 2000) (stating that the Fifth Amendment's Due Process Clause, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment, governed a pretrial detainee's claim of excessive force). Accordingly, in the absence of any briefing, the most prudent course is to permit Plaintiff's claim of excessive use of force to proceed under both the Fifth and Eighth Amendments for screening purposes since Plaintiff's allegations, at this stage, would state a claim for relief under either constitutional amendment.

**D.    The *Bivens* Analysis**

In *Bivens*, the Supreme Court found a private right of action for monetary damages for the violation of one's constitutional rights by a federal agent acting under color of federal authority. *Bivens*, 403 U.S. at 389; *see, e.g., Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009). "The purpose of the *Bivens* remedy 'is to deter individual federal officers from committing constitutional violations.'" *Arar*, 585 F.3d at 571 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001)). The *Bivens* remedy is applicable only in an extremely narrow set of circumstances. "In the forty-six years since *Bivens* was decided, the Supreme Court has extended the precedent's reach only twice, and it has otherwise

consistently declined to broaden *Bivens* to permit new claims." *Doe v. Hagenbeck*, 870 F.3d 36, 43 (2d Cir. 2017) (footnotes omitted). "Recently, the Supreme Court reiterated that courts should not imply rights and remedies as a matter of course, 'no matter how desirable that might be as a policy matter, or how compatible with the statute [or constitutional provision].'" *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 57 (E.D.N.Y. 2017) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017)), *aff'd*, 755 F. App'x 67 (2d. Cir. 2018). "Given the notable change in the Court's approach to recognizing implied causes of action, . . . the Court has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

In determining whether to recognize an implied *Bivens* cause of action, a court must first "determine whether a plaintiff's claims arise in a new *Bivens* context." *Sanford v. Bruno*, No. 17-CV-5132 (BMC), 2018 WL 2198759, at *5 (E.D.N.Y. May 14, 2018). "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new." *Ziglar*, 137 S. Ct. at 1859. If the case presents a new *Bivens* context, then the court must determine "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). "This second step is often referred to as the special-factors analysis." *Sanford*, 2018 WL 2198759, at *5. "The Court's precedents now make clear that a *Bivens* remedy will not be available if there are 'special factors counselling hesitation

in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)).

In *Carlson*, the Supreme Court extended the *Bivens* remedy in the context of an Eighth Amendment cruel and unusual punishment claim based upon the defendants' deliberate indifference to the plaintiff's medical needs. 446 U.S. at 18-21. The Supreme Court has also extended *Bivens* to claims of gender discrimination under the Fifth Amendment's Due Process Clause. *See Davis v. Passman*, 442 U.S. 228, 248 (1979). However, "[a] Fifth Amendment excessive force claim clearly places a different constitutional right at issue than the Eighth and Fourth Amendment claims in *Carlson* and *Bivens*, respectively[, and] . . . there are obvious meaningful differences between excessive force and gender discrimination claims." *Abdoulaye v. Cimaglia*, No. 15-CV-4921 (PKC), 2018 WL 1890488, at \*6 (S.D.N.Y. Mar. 30, 2018). To the extent that Plaintiff's excessive force claims arise under the Eighth Amendment, there are also meaningful differences between Plaintiff's allegations of severe physical abuse and the indifference to medical needs at issue in *Carlson*. (*See* Dkt. 7 at 20-22); *see also Ziglar*, 137 S. Ct. at 1860 ("A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous Bivens cases did not consider."). Since no Supreme Court decision has ever extended *Bivens* to encompass the specific context

presented by Plaintiff's excessive force claims, this cause of action presents a new *Bivens* context.

However, for the same reasons discussed in the Court's July 11, 2018, screening order, the Court elects not to delve into the issue of whether "special factors" counsel against the extension of *Bivens* to this context without the benefit of briefing by the parties upon a dispositive motion. Therefore, for screening purposes only, the Court assumes *arguendo* that a remedy under *Bivens* is available to Plaintiff regarding his claims of excessive force asserted against Philips.

## II. Plaintiff's Claims Against the John Doe Defendants are Dismissed with Prejudice

### A. Plaintiff's Claims of Conspiracy

The Court previously dismissed Plaintiff's conspiracy claims asserted against the John Doe Defendants for failure to state a claim because Plaintiff's allegations of a conspiracy to violate his constitutional rights were vague and conclusory. (Dkt. 6 at 23 n.5). "Under some circumstances, a private party who conspires with federal officials to violate an individual's constitutional rights can be held liable under *Bivens*." *Burton v. Am. Fed'n of Gov't Emps. (AFGE) 1988*, No. 11-CV-1416 (SLT) (LB), 2012 WL 3580399, at *14 (E.D.N.Y. Aug. 17, 2012). However, Plaintiff's claims of conspiracy have not been stated with any greater clarity than they were in his initial Complaint. *See Philippeaux v. United States*, No. 19-CV-3221 (CM), 2019 WL 2082549, at *4 (S.D.N.Y. May 13, 2019) ("Conclusory and vague allegations of conspiracy are insufficient to state a claim under *Bivens*."). Plaintiff alleges that John Doe 1 consented to the use of his airplane despite

having been aware that Philips and "his ICE agents" would use the aircraft to violate Plaintiff's constitutional rights. (Dkt. 7 at 23). Plaintiff also alleges that John Doe 2 and John Doe 3 "witnessed" the use of excessive force against him and did nothing to stop it. (*See id.* at 25-27).

"Diffuse and expansive allegations . . . will not suffice to sustain a claim of governmental conspiracy to deprive appellants of their constitutional rights." *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977). "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights" will not survive dismissal. *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983). A "plaintiff must 'make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Ivery v. Baldauf*, 284 F. Supp. 3d 426, 439 (W.D.N.Y. 2018) (quoting *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999)).

Plaintiff fails to allege facts demonstrating a conspiracy to violate his constitutional rights. Simply asserting that John Doe 1 entered into a "contractual agreement" with Philips and others to use his aircraft to violate Plaintiff's constitutional rights and then "consented" to the use of excessive force (Dkt. 7 at 23) is no less vague than his initial allegations that the John Doe Defendants were "conniving" with Philips to violate his rights (*see* Dkt. 1 at 20, 22-24). Plaintiff provides no details related to this alleged contractual agreement. Additionally, in Plaintiff's motion for a *Valentin* order, he indicates that John Doe 1 was a governmental "contractor" (Dkt. 9 at 2), and thus, it appears that the

"contractual agreement" he references may pertain to John Doe 1's employment status. Plaintiff's allegations that John Doe 2 and John Doe 3 "witnessed" and "fully participated" in the use of excessive force (Dkt. 7 at 25-26) is likewise too diffuse and conclusory to proceed to service.

Therefore, to the extent Plaintiff attempts to reallege his claims of conspiracy against the John Doe Defendants, Plaintiff's conclusory allegations are insufficient to state a claim for conspiracy under *Bivens* and this claim is dismissed with prejudice. *See, e.g, Abascal v. Hilton*, No. 9:04-CV-1401(LEK/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan. 30, 2008) ("[G]ranting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading." (collecting cases)), *aff'd sub nom. Abascal v. Jarkos*, 357 F. App'x 388 (2d Cir. 2009); *see also Ouderkirk v. United States*, No. 3:18-CV-0053 (LEK/DEP), 2018 WL 1768278, at *1 (N.D.N.Y. Apr. 12, 2018) ("Given the Court's doubt that an opportunity to file a second amended complaint will prove meaningful, the Court dismisses this action with prejudice.").

## B. Plaintiff's Claims for Failure to Intervene are Dismissed with Prejudice

Plaintiff's allegations do not adequately state conspiracy claims against the John Doe Defendants; however, construing Plaintiff's allegations to raise "the strongest arguments that they suggest," *see Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quotation omitted), it appears Plaintiff also attempts to assert a failure to intervene claim against John Doe 1 and John Doe 2. Specifically, Plaintiff alleges that John Doe 1 and John Doe 2 "witnessed" the alleged application of excessive force and did nothing to intervene. (Dkt. 7 at 25-27). Nonetheless, Plaintiff does not allege that any of

- 13 -

the John Doe Defendants were law enforcement officers. According to Plaintiff, John Doe 1 is the "Owner/Chief Executive Officer" of the "Giant Private Airline" and the "Removal Plane." (*Id.* at 3). Plaintiff also states that John Doe 2 was the "pilot of the deportation plane" and that John Doe 3 was the co-pilot. (*Id.* at 4). Furthermore, in his motion papers submitted along with the Amended Complaint, Plaintiff identifies John Doe 1 as a government "contractor." (Dkt. 9 at 2).

Plaintiff's allegations do not demonstrate that the John Doe Defendants had a legal duty to intervene, even assuming that they witnessed Philips' purported use of excessive force. Unlike law enforcement officers such as police or corrections officers, who are sworn to uphold the law, civilian government contractors or employees have no similar duty by virtue of their position of employment. *See Ali v. McAnany*, 262 F. App'x 443, 446 (3d Cir. 2008) (concluding that a claim for failure to intervene should be dismissed against the defendant prison nurse "because she is not a corrections officer and thus did not have a duty to intervene"); *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 297 (N.D.N.Y. 2018) (dismissing failure to intervene claim against county medical examiner where the plaintiff failed to "allege facts plausibly suggesting that [the defendant was] a law enforcement officer," and noting that "generally, the duties of a medical examiner are independent of those of a police officer"), *appeal dismissed*, (2d Cir. May 2, 2018); *Smith v. Donate*, No. 4:10-CV-2133, 2012 WL 1899323, at *6 (M.D. Pa. Apr. 5, 2012) (describing the duty to intervene imposed upon law enforcement officers and stating that "where the defendant is a medical professional, and not a correctional officer, no such special duty exists, and an inmate may not sustain a failure to intervene claim"), *report and*

*recommendation adopted*, No. CIV. 4:10-2133, 2012 WL 1899318 (M.D. Pa. May 24, 2012); *Rendely v. Town of Huntington*, No. 2;03-CV-03805-ENV, 2006 WL 5217083, at *6 (E.D.N.Y. Aug. 30, 2006) ("Because Ryan and Rinker were civilian employees of the Town of Huntington, and thus not law enforcement officials, they had no authority or duty to intervene to prevent the Suffolk County police from taking plaintiff into custody."); *see also Musso v. Hourigan*, 836 F.2d 736, 743 (2d Cir. 1988) ("As a general rule, a government official is not liable for failing to prevent another from violating a person's constitutional rights, unless the official is charged with an affirmative duty to act." (citing *Rizzo v. Goode*, 423 U.S. 362, 375 (1976))); *Phoenix v. Reddish*, 175 F. Supp. 2d 215, 220 (D. Conn. 2001) ("While the Second Circuit has held that a police officer has a duty to prevent other officers from using excessive force, there is no Supreme Court or Second Circuit authority that imposes an affirmative duty on a non-police state actor . . . to intervene to prevent a police officer from conducting an unlawful search and seizure.").

Accordingly, because Plaintiff has failed to allege that any of the John Doe Defendants were law enforcement officers, who had a duty to intervene on his behalf, and has instead alleged that they were civilian contractors or employees providing piloting and transportation services, any claim against the John Doe Defendants for failure to intervene is dismissed with prejudice. *See, e.g., Ouderkirk*, 2018 WL 1768278, at *1.

III.  **Plaintiff's Claims Related to the Alleged Destruction of his Legal Materials are Dismissed with Prejudice**

The Court also previously dismissed Plaintiff's First, Fourth, and Fifth Amendment claims related to the alleged destruction of his legal materials without prejudice. The Court

- 15 -

dismissed Plaintiff's Fourth Amendment claims for the destruction of his legal materials because Plaintiff failed to "allege facts that demonstrate[d] an infringement upon any reasonable expectation of privacy." (Dkt. 6 at 14); *see Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (holding that a prisoner does not have a reasonable expectation of privacy in his prison cell). The Court then construed Plaintiff's First and Fifth Amendment claims as asserting a violation of his right of access to the courts. (Dkt. 6 at 14); *see Garcia v. Lawrence*, 118 F. App'x 436, 439 n.6 (10th Cir. 2004) ("The due process clause protects the right of access to the courts."); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."); *Adekoya v. Herron*, No. 6:10-CV-6646 (MAT), 2013 WL 6092507, at *12 (W.D.N.Y. Nov. 19, 2013) ("The constitutional right of access to the courts is protected by the First Amendment's right to petition the government for redress of grievances. In addition, a corollary to the constitutional guarantee of due process of law is the requirement that prisoners be afforded access to the courts in order to seek redress for violations of their constitutional rights." (citation omitted)); *Miner v. Sheriden*, No. 3:94CV1443 (AHN), 1996 WL 684386, at *5 (D. Conn. Sept. 17, 1996) (same), *aff'd sub nom. Miner v. Sheridan*, 199 F.3d 1322 (2d Cir. 1999). However, the Court dismissed those claims without prejudice as well because even assuming *arguendo* that they raised cognizable *Bivens* causes of action, Plaintiff failed to "allege that the loss of his legal materials ultimately resulted in the dismissal" of any previously-filed legal actions that he claimed to have lost. (Dkt. 6 at 20).

### A.  Plaintiff Failed to Allege a Reasonable Expectation of Privacy

Plaintiff's Amended Complaint does not contain any factual allegations in support of a Fourth Amendment *Bivens* claim against Philips or the John Doe Defendants.[3]  Indeed, Plaintiff now specifically relies upon the First and Fifth Amendments in asserting that his right of access to the courts was violated. (Dkt. 7 at 18, 29).  In any event, Plaintiff has again failed to allege facts demonstrating that Philips' purported misconduct in allegedly confiscating and destroying his legal materials violated a reasonable expectation of privacy.  Therefore, to the extent Plaintiff requests relief pursuant to the Fourth Amendment for the alleged destruction of his legal documents, that claim is dismissed with prejudice. *See, e.g., Ouderkirk*, 2018 WL 1768278, at *1; *Abascal*, 2008 WL 268366, at *8.

### B.  Plaintiff Failed to State a Claim for the Violation of his Right of Access to the Courts

"A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986).  "An access to courts claim requires the pleading of (1) a 'nonfrivolous, arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim." *Arar*, 585 F.3d at

---

[3]      To the extent Plaintiff alleges that his Fourth Amendment rights were violated when he was unlawfully arrested by "ICE Agents" (Dkt. 7 at 16), this allegation appears to reference allegations raised in a separate case filed within the United States District Court for the District of Connecticut and does not set forth facts demonstrating that any Defendants named in this action violated Plaintiff's Fourth Amendment rights.

592 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002)). "A plaintiff asserting a claim for a violation of his right of access to the courts 'must demonstrate that a defendant caused actual injury,' meaning that the defendant 'took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim.'" *Pacheco v. Connecticut*, 471 F. App'x 46, 47 (2d Cir. 2012) (quoting *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997)). "To establish an 'actual injury,' plaintiff must show that 'the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim.'" *Zeigler v. New York*, 948 F. Supp. 2d 271, 294 (N.D.N.Y. 2013) (quoting *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008)).

"To satisfy the requirement that the underlying claim not be frivolous, a plaintiff must describe the claim well enough for the court to determine whether the claim had an arguable basis in either law or fact." *Rosario v. Fischer*, No. 11 Civ. 4617 (JPO) (FM), 2012 WL 4044901, at *7 (S.D.N.Y. Aug. 28, 2012), *report and recommendation adopted*, 2012 WL 6681695 (S.D.N.Y. Dec. 20, 2012). In asserting a claim for the denial of the right of access to the courts, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher*, 536 U.S. at 415. "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18 (footnote omitted). This pleading requirement arises from the need "to give fair notice to a defendant," it permits the application of "the 'nonfrivolous' test," and it

- 18 -

requires the plaintiff to demonstrate "the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416. In differentiating between claims that have colorable merit and those that are frivolous, the Supreme Court stated, in pertinent part:

> Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value—arguable claims are settled, bought, and sold. Depriving someone of a frivolous claim, on the other hand, deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.

*Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996).

Plaintiff outlines several past and/or pending judicial and administrative actions that he claims were lost or could be lost as a result of Philips' alleged confiscation and destruction of his legal documents and paperwork. (*See* Dkt. 7 at 7-16). Although Plaintiff has now identified actions he claims were or could be lost, which were previously absent from his initial Complaint, Plaintiff fails to allege facts demonstrating that any of these purported underlying claims were "nonfrivolous" and had "arguable" merit.

Plaintiff alleges that the claims he purportedly "lost" as a result of Philips' conduct involve the fabrication of evidence, unlawfully influencing the jury's composition, the fabrication of federal charges never submitted to a grand jury, and government witnesses perjuring themselves to avoid disclosing their status as government informants. (*See* Dkt. 7 at 7-8, 11-12). While Plaintiff's accusations depict troubling scenarios on their face, his assertions are wholly conclusory and unsupported by plausible factual allegations. Plaintiff offers no factual assertions to permit a reasonable inference that perjurious testimony was elicited against him in a previous action or that he suffered any other subversion of the criminal justice system. Plaintiff may disagree with how his previous legal matters

concluded, but his allegations do not state a plausible underlying claim for which any purportedly lost legal materials would have been material.

Plaintiff suggests that he "had exculpatory documentary evidence of 'prosecutorial misconduct'" that would have demonstrated the substance of his underlying claims. (*See, e.g.*, Dkt. 7 at 8). However, not only has Plaintiff failed to sufficiently allege his underlying claims so as to provide Defendants with fair notice and to comply with the strictures of Fed. R. Civ. P. 8(a), *see Christopher*, 536 U.S. at 416-18, he has also failed to explain how any of his lost documentation or research would have assisted him in pursuing these claims. "Although the taking of an inmate's papers will often interfere with an inmate's right of access to courts, the Court may not presume harm, and some showing of impaired access is required." *Arce v. Walker*, 58 F. Supp. 2d 39, 44 (W.D.N.Y. 1999) (quotation and citation omitted); *see Lewis*, 518 U.S. at 360 n.7 ("Courts have no power to presume and remediate harm that has not been established."). A plaintiff's "conclusory assertion that he suffered prejudice does not suffice to support an access to court claim." *Arce*, 58 F. Supp. 2d at 44.

Plaintiff has not clearly asserted that any of the documents he seeks in his motion for subpoenas, addressed below, were the ones allegedly confiscated or destroyed or that there is reason to infer that their purported destruction actually hindered Plaintiff in his legal matters in any material way. *See Abreu v. Travers*, No. 9:15-CV-0540 (MAD) (ATB), 2016 WL 6127510, at *11 (N.D.N.Y. Oct. 20, 2016) ("[P]laintiff fails to allege any facts to plausibly suggest that a non-frivolous claim was actually hindered or prejudiced because of the alleged denial of access to legal materials."). Although Plaintiff states that

at least one of his legal claims was dismissed for lack of sufficient documentary evidence (Dkt. 7 at 9), Plaintiff has not set forth factual assertions that demonstrate the documents he allegedly possessed would have had any impact on his success. In other words, Plaintiff has failed to allege a reasoned basis to believe that the documents he was in possession of or now seeks to obtain have any bearing on his underlying claims. In short, Plaintiff's allegations do not demonstrate that his underlying claims are supported by anything but mere "hope." *See Christopher*, 536 U.S. at 416 (recognizing "the need for care in requiring that the predicate claim be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope"); *Ramos v. Culick*, No. 6:16-CV-01312 (FJS/TWD), 2017 WL 835406, at *5 (N.D.N.Y. Feb. 9, 2017) ("Plaintiff has failed to set forth facts in his amended complaint suggesting that if he were to challenge his conviction relying on the four photographs, his success would be based on more than mere 'hope.'"), *report and recommendation adopted*, 2017 WL 823580 (N.D.N.Y. Mar. 2, 2017). Lastly, insofar as Plaintiff contends that Philips' alleged misconduct *might* result in the loss of any pending litigation, Plaintiff has failed to set forth *factual* assertions of "actual injury" in support of this speculative position.

Therefore, Plaintiff's First and Fifth Amendment claims for the destruction of his legal materials are dismissed with prejudice. *See, e.g.*, *Ouderkirk*, 2018 WL 1768278, at *1; *Abascal*, 2008 WL 268366, at *8.

## IV. Plaintiff's Motion for Access to the Court's Electronic Filing System is Denied Without Prejudice

Plaintiff has moved for a court order granting him permission to use CM/ECF in lieu of filing his submissions by mail. (*See* Dkt. 8). Plaintiff claims that he is temporarily residing in Nigeria[4] and that the "international postal systems [are] too slow and not reliable." (*Id.* at 1). Plaintiff also suggests that the "international postal systems will delay this case and possibly obstruct" his mailings. (*Id.*).

Rule 5 of the Federal Rules of Civil Procedure provides that a litigant proceeding *pro se* "may file electronically only if allowed by court order or by local rule." Fed. R. Civ. P. 5(d)(3)(B)(i). This District's Local Rules of Civil Procedure do not specifically provide for *pro se* access to the Court's electronic filing system. However, the Court's Administrative Procedures Guide for Electronic Filing, which is incorporated by reference within Local Rule 5.1(a), *see* L.R. Civ. P. 5.1(a), provides that "[t]ypically only registered attorneys, as Officers of the Court, will be permitted to file documents electronically. A Judicial Officer may, <u>at his or her discretion</u>, grant a pro se litigant who demonstrates a

---

[4]    The Court previously questioned the veracity of this statement because the signature block in Plaintiff's initial Complaint included a mailing address located in the State of Connecticut. (Dkt. 6 at 3 n.1). Although Plaintiff appears to provide an address in Nigeria on several more recent submissions (*see* Dkt. 7 at 64-66; Dkt. 11 at 12; Dkt. 15 at 6), he still lists the Connecticut address on several others (Dkt. 12 at 1; Dkt. 13 at 1; Dkt. 16 at 1). Indeed, the return address on the envelope relating to one of Plaintiff's motions filed in March references an address in Houston, Texas. (Dkt. 14 at 5). Furthermore, Plaintiff's address currently maintained with the Court remains 31 Sutton Place, Bloomfield, Connecticut 06002, and it is apparent that Plaintiff did not have any issue receiving the Court's previous mailing containing its July 11, 2018, screening order. Plaintiff is obligated to keep the Court abreast of his current mailing address, and if he wishes to alter his mailing address to reflect a new address in Nigeria, he should so notify the Clerk of Court. *See* L.R. Civ. P. 5.2(d).

willingness and capability to file documents electronically, permission to register to do so," *see* Administrative Procedures Guide for Electronic Filing, at 3 (Mar. 2018), *available at* https://www.nywd.uscourts.gov/rules-individual-local-federal.

Plaintiff has not set forth any exceptional reason for this Court to exercise its discretion and permit his access to CM/ECF. Indeed, Plaintiff has had no difficulty filing a number of letter correspondences and motions with the Court through the postal systems. Because Plaintiff has not provided a persuasive reason for the Court to exercise its discretion to permit him access to CM/ECF, Plaintiff's motion for permission to use the Court's electronic filing system (Dkt. 8) is denied without prejudice.

## V.     **Plaintiff's Motion for a *Valentin* Order is Granted in Part and Denied in Part**

Plaintiff requests that the Court issue an order pursuant to the Second Circuit's decision in *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), requiring the United States Attorney's Office to ascertain Philips' service address as well as the identity and service addresses for the John Doe Defendants. (Dkt. 9). Plaintiff contends that Philips has since retired from his position with ICE, and thus, Plaintiff is "unable to obtain his current contact information." (*Id.* at 1). Because the Court has dismissed each claim alleged against the John Doe Defendants with prejudice, Plaintiff's motion for a *Valentin* order pertaining to their identities and service addresses is denied as moot. However, because the Court has permitted Plaintiff's excessive force claims against Philips to proceed to service, the Court hereby directs the United States Attorney for the Western District of New York to ascertain Philips' last known service address. *See Akande v. U.S. Marshals Serv.*, No. 3:11CV1125(RNC), 2018 WL 1383397, at *11 (D. Conn. Mar. 19, 2018) ("Pursuant to

*Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), the U.S. Attorney is ordered to ascertain the identity and service addresses of John Does 1 and 2."); *Lewis v. Hellerstein*, No. 14-CV-4533 (ARR) (SMG), 2014 WL 4075950, at *2 (E.D.N.Y. Aug. 13, 2014) ("The Court requests the U.S. Attorney's Office for the Eastern District of New York to ascertain the full names and service addresses of the John Doe defendants involved in the July 10, 2014 incident discussed herein, which allegedly occurred around 8:30 a.m."); *see also Ramirez v. Roberts*, No. 1:06-CV-06773-ENV-LB, 2008 WL 842428, at *1 n.1 (E.D.N.Y. Mar. 28, 2008) ("These defendants were previously employed as paramedics and allegedly treated plaintiff at the time of the underlying incident. As they are no longer employed by the City, the Corporation Counsel provided their last-known addresses."); *Bryant v. N.Y. State Dep't of Corr. Servs. Albany*, No. 00 CIV 3728 RMB FM, 2001 WL 263315, at *1 (S.D.N.Y. Mar. 16, 2001) ("In accordance with *Valentin*, I hereby direct the Attorney General's Office to obtain Hernandez's last known residence address . . . and provide it to the Marshals Service within twenty days."); *London v. Watkins*, No. 99 CIV. 2769(LAK)(RLE), 2000 WL 713088, at *1 (S.D.N.Y. June 2, 2000) (ordering the identification of the officers' "last known address" pursuant to *Valentin* if "either officer is no longer employed by the City of New York Department of Correction"). "The U.S. Attorney's Office need not undertake to defend or indemnify [Philips]. . . . This order merely provides a means by which plaintiff may name and properly serve [Philips]." *Lewis*, 2014 WL 4075950, at *2; *see, e.g., Akande*, 2018 WL 1383397, at *11 (same).

In light of Plaintiff's *in forma pauperis* status (*see* Dkt. 6), Plaintiff is entitled to use the United States Marshals Service to effect service, *see Thompson v. Maldonado*, 309 F.3d

107, 109 n.2 (2d Cir. 2002) ("*In forma pauperis* plaintiffs are entitled to use the [United States Marshals Service] to effect service."). Accordingly, the United States Attorney's Office is hereby directed to produce this information to the United States Marshals Service within 21 days of the date of this Decision and Order, and the United States Marshals Service is instructed to effectuate service upon Philips within 30 days after its receipt of this information. *See Bryant*, 2001 WL 263315, at *1.

## VI.    Plaintiff's Motion for Subpoenas is Denied Without Prejudice

Rule 45 of the Federal Rules of Civil Procedure sets forth the required procedures for using subpoenas in civil cases. "A subpoena must issue from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). "An attorney also may issue and sign a subpoena if the attorney is authorized to practice in the issuing court." Fed. R. Civ. P. 45(a)(3).

Plaintiff requests the Court to issue six subpoenas. (Dkt. 10). The "Western District of New York's Pro Se Litigation Guidelines sets forth in detail how a *pro se* litigant may request a subpoena in a section entitled Request for Subpoenas in Pro Se Action." *Abascal v. Fleckenstein*, No. 06-CV-0349S(Sr), 2010 WL 3834839, at *4 (W.D.N.Y. Sept. 29, 2010). This District's *Pro Se* Litigation Guidelines, which are available on the Court's public website, provide that "[l]ocal practice . . . does require that a request for subpoena be in writing, including the name and address of the person/entity to whom the subpoena is directed and what is being sought." Pro se Litigation Guidelines, at 25 (Dec. 2017), *available    at    https://www.nywd.uscourts.gov/self-help-manual-pro-se-litigation-guidelines.*

- 25 -

However, "the majority of jurisdictions" hold "that a Rule 45 subpoena does in fact constitute discovery." *Mortg. Info. Servs., Inc. v. Kitchens*, 210 F.R.D. 562, 566 (W.D.N.C. 2002) (collecting cases); *see Draper v. U.S. Postal Serv.*, No. 3:18CV00009, 2018 WL 2423002, at *2 (W.D. Va. May 29, 2018) (stating that "subpoenas are discovery devices and, as such, are generally subject to the provisions of Federal Rule of Civil Procedure 26(d) governing the start of discovery," and denying the issuance of subpoenas because "discovery is premature"), *aff'd*, 740 F. App'x 315 (4th Cir. 2018); *Jefferson Pilot Life Ins. Co. v. Marietta Campbell Ins. Grp., LLC*, No. CV 07-1359 (ADM/RLE), 2008 WL 11349715, at *9 (D. Minn. Apr. 10, 2008) (stating that "Rule 45 Subpoenas are a form of discovery which is subject to the Rules which constrain discovery," and granting motion to quash because discovery was premature), *objections overruled*, 2008 WL 3582751 (D. Minn. Aug. 12, 2008); *accord Sampson v. Medisys Health Network, Inc.*, No. CV 10-1342 (SJF)(ARL), 2010 WL 11678005, at *1 (E.D.N.Y. Aug. 17, 2010) (granting motion to quash subpoenas because "discovery is premature in the case" and since "a party may not seek discovery from any source until the parties have conferred as required by Rule 26(f)"); *Baskerville v. Cunningham*, No. 01-CV-0606SR, 2004 WL 941639, at *2 (W.D.N.Y. Jan. 13, 2004) (denying issuance of subpoenas as "premature" prior to the pretrial conference). The instant matter has only proceeded through the screening stage. Philips has not yet appeared and a Rule 26(f) conference has not been held. Therefore, the Court denies Plaintiff's motion for subpoenas without prejudice as premature.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims related to the destruction of his legal materials asserted against Philips as well as all claims against the John Doe Defendants are dismissed with prejudice. Plaintiff's excessive force claims against Philips are the sole surviving claims in the Amended Complaint, and they may proceed to service. In addition, Plaintiff's motion for permission to use the Court's electronic filing system (Dkt. 8) is denied without prejudice, Plaintiff's motion for a *Valentin* order (Dkt. 9) is denied in part and granted in part, and Plaintiff's motion for subpoenas (Dkt. 10) is denied without prejudice as premature. Accordingly, Plaintiff's motions to expedite (Dkt. 14; Dkt. 15) are both dismissed as moot.

The Clerk of Court is directed to send a copy of this Decision and Order and the Amended Complaint to the United States Attorney's Office for the Western District of New York. The United States Attorney's Office is instructed to provide Philips' last known address to the Clerk of Court within twenty-one (21) days of this Decision and Order. Once the United States Attorney's Office has provided Philips' last known address, the Clerk of Court is further directed to cause the United States Marshals Service to attempt to serve copies of the Summons, Amended Complaint (Dkt. 7), and this Decision and Order upon Philips at the address provided within thirty (30) days, without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor.

SO ORDERED.

                                    _____

                                ELIZABETH A. WOLFORD
                                United States District Judge

Dated:      June 24, 2019
               Rochester, New York